UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIRNELL WILLIAMS,<br><br>           Plaintiff,<br><br>      v.<br><br>MARC HODGE, NURSE HARDY, DR. PHIL MARTIN, OFFICER LOY, TY BATES, ILLINOIS DEPARTMENT OF CORRECTIONS and SALVADOR GODINEZ,<br><br>           Defendants. | Case No. 13-cv-216-JPG-PMF |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 67) of Magistrate Judge Philip M. Frazier recommending that the Court deny plaintiff Tirnell Williams' motions for a preliminary injunction mandating additional medical supplies and treatment and a transfer from Lawrence Correctional Center, where he is currently housed, to Dixon Correctional Center or Robinson Correctional Center where he believes facilities are available that can better accommodate his disability (Docs. 6 & 29). Williams has objected to the Report (Doc. 70), and defendants Illinois Department of Corrections ("IDOC") and Health Care Unit Administrator Dr. Phil Martin have responded to Williams' objection (Doc. 73). The Court further considers other matters in this case.

**I.    Preliminary Injunction**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those

unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Williams, a wheelchair-bound inmate, filed this case on March 4, 2013, claiming, among other things, that IDOC was violating the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, because Williams' cell did not comply with the regulations promulgated under those statutes. He also claims defendants Nurse Hardy and Martin were deliberately indifferent to his medical needs when they denied him sufficient catheters, diapers, other supplies, a trained aid, physical therapy and metal leg braces.

Magistrate Judge Frazier issued the Report after holding a hearing on July 8, 2013, at which Williams, Dr. Emily Thomann (a physical therapist), Lorie Cunningham (director of nursing), defendant William Loy (a correctional officer), Daniel Funk (chief engineer) and defendant Martin testified. After setting forth the appropriate standard for deciding whether preliminary injunctive relief is warranted, Magistrate Judge Frazier concluded that Williams did not demonstrate a likelihood of success on the merits, irreparable harm or narrowly tailored relief. Specifically, he concluded that the configuration of Williams' cell, which appears to comply with the ADA accessibility standards in place when Lawrence was constructed in 2001, provides reasonable accommodation for wheelchair-bound inmates with Williams' limitations. Magistrate Judge Frazier also found Williams has access to medical care, instruction and supplies in the amounts deemed adequate by medical personnel and that Williams' fear that he will suffer an infection if the Court does not grant injunctive relief is speculative. Finally, he found no evidence that the relief Williams seeks would satisfy his security needs and is the least intrusive means of accommodating his health needs.

Williams objects that from May 17 to 23, 2013, he was on suicide watch in the Health Care Unit in an area that did not comply with ADA regulations. He further disagrees with evidence that he was receiving sufficient diapers and catheters and that he could transfer from his wheelchair to the toilet. His alleged inability to transfer, he claims, renders even an ADA-compliant cell inadequate and mandates a transfer to a different institution. Finally, he complains that the defendants talked together when he received physical therapy. He also complains about his placement in segregation as a method of keeping him safe from other inmates, but that issue is beyond the scope of the remaining claims in this case.

The Court has reviewed the matter *de novo*, including the transcript of the July 8, 2013, hearing, and finds that the Report is correct for the reasons stated therein. The evidence does not show Williams' cell fails to comply with ADA regulations. Magistrate Judge Frazier further found credible the evidence that Williams can transfer from his wheelchair to the toilet so that his disability does not render the ADA-compliant cell inadequate for him. As for the non-ADA compliant Health Care Unit cell in which he was housed for a short period, he is no longer in that cell, so he will not suffer irreparable harm if injunctive relief is denied.

As for Williams' deliberate indifference complaints about the medical care, supplies, instruction and physical therapy, they amount to no more than a disagreement about the proper way to treat his medical needs. While the defendants' judgment may amount to negligence, he has not shown it is deliberate indifference.

Finally, the balancing of the harms does not weigh in Williams' favor. Magistrate Judge Frazier was right to be hesitant to tell prison administrators how to do their jobs. Ordinarily, courts defer to the judgment of prison administrators on matters regarding prison management

issues.  *See Overton v. Bazzetta,* 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them").   In making housing assignments, IDOC must balance the security needs of more than 40,000 inmates, making sure to keep apart those with known animosity towards each other while providing for their health needs.   This is a delicate balance that risks being thrown out of kilter by courts' directing placement of individual inmates.  On Williams' side, the evidence shows he is able to transfer to the toilet, has the medical care and supplies recommended by medical personnel, is not suffering from any current infection and is in a safe placement for him and other inmates.   Additionally, there is no evidence suggesting both Williams' health *and* security needs could be met at Dixon or Robinson.   All in all, the risk of disruption to the prison housing assignment balance outweighs any health danger Williams might face in Lawrence.

**II.   Filing Fee**

Williams signed his complaint on February 25, 2013, and it was received and docketed on March 4, 2013 (Doc. 1).   The Court allowed Williams proceed without prepayment of fees and assessed an initial partial filing fee of $46.24 pursuant to 28 U.S.C. § 1915(b)(1) (Doc. 11).   The Court calculated this filing fee after considering the average monthly balance or deposits in Williams' account for the six-month period immediately preceding the filing of the complaint (Doc. 7).   Williams began that period with a balance of $575.15.   He then spent the vast majority of that balance on the library, postage, filing fees, telephone payments and commissary purchases, making several substantial commissary purchases (in the amount of $332.56 and $50.23), leaving

4

him with a little less than $69.23 in his account when he filed this lawsuit. The Court further notes that Williams received about $8.00 for his prison job in most months during that six-month period and $92.04 in other receipts.

On June 24, 2013, Magistrate Judge Frazier ordered Williams to pay on or before August 15, 2013, the $46.24 initial partial filing fee assessed at the outset of this case or to demonstrate that he has no assets and no means to pay that sum (Doc. 57). Since that order, Williams has not made any payments toward paying the initial partial filing fee. On July 15, 2013, Williams filed a document in which he argues that he does not have the assets to pay the fee due and to which he attaches an updated prison trust fund account statement for the period from January 4 to June 25, 2013 (Doc. 66). That statement shows that he depleted the $69.23 he had when he filed this lawsuit down to $0.04 by spending his funds on commissary purchases, the library, postage and a medical copayment. The updated trust fund account statement also shows one receipt of $8.24 but no income from a prison job since Williams filed this case.

It is clear that within the six months before Williams filed this suit and at the time he filed the suit, he was capable of paying $46.27 to the Court. At that time he also should have expected to be liable for this sum in light of the substantial balances in his account in the six months prior to filing suit; he could have easily calculated the initial partial filing fee (or at least a ballpark figure) based on his account history and the formula set forth in the statute. *See* 28 U.S.C. § 1915(b)(1). Nevertheless, Williams depleted his account until he no longer had sufficient funds to pay the fee due. However, current poverty does not excuse compliance with 28 U.S.C. § 1915(b)(1) where the inmate had the resources to pay at the time he filed suit. *Robbins v. Switzer,* 104 F.3d 895, 898 (7th Cir. 1997). If the inmate chose to spend money on other things after filing his suit, he may

5

not proceed unless the initial partial filing fee is paid. *Id.* However, rather than dismissing this case at the present time, the Court will give Williams additional time to pay the fee due and will stay this case in the meantime.

### III. Other Matters

Williams has filed a Motion to Address the Court with an Oral Statement (Doc. 30). Williams was allowed to address the Court orally at the preliminary injunction hearing and he will be allowed to address the Court orally at other appropriate times (*e.g.*, if there is a motion hearing or a trial). Furthermore, Williams has demonstrated the ability to communicate adequately with the Court in writing. The Court will therefore deny William's motion (Doc. 30).

Williams has also filed a motion asking the Court to force defendants IDOC, Marc Hodge and Martin to answer the Second Amended Complaint using the correct case caption (Doc. 62). Although Williams has tendered a document captioned as a "Second Amended Complaint," the document was refused by the Court (Doc. 69). Therefore, the defendants have no obligation to respond to it. To the extent the answer to the original complaint filed by IDOC (through IDOC Director Salvador Godinez in his official capacity), Hodge and Martin (Doc. 58) contains an incorrect caption, the error is harmless because the body of the document indicates on whose behalf it is filed. The defendants are cautioned to be more careful in future filings. The motion (Doc. 62) will be denied.

### IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 67);
- **DENIES** Williams' motions for a preliminary injunction (Docs. 6 & 29);
- **ORDERS** that Williams shall have up to and including October 31, 2013, to pay the entire

initial partial filing fee of $46.27;

- **STAYS** this case until further order of the Court;

- **WARNS** Williams that if he does not pay the entire initial partial filing fee of $46.27 by October 31, 2013, the Court will dismiss this case without prejudice;

- **DENIES** Williams' Motion to Address the Court with an Oral Statement (Doc. 30); and

- **DENIES** Williams' motion for an order directing a response to the Second Amended Complaint (Doc. 62).

**IT IS SO ORDERED.**
**DATED:   October 8, 2013**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**